106 N.J. Super. 111 (1969)
254 A.2d 325
VORNADO, INC., A CORPORATION OF THE STATE OF DELAWARE, PLAINTIFF,
v.
LIBERTY MUTUAL INSURANCE COMPANY, A CORPORATION, AND CONSOLIDATED MUTUAL INSURANCE COMPANY, AN INSURANCE CORPORATION, DEFENDANTS. LIBERTY MUTUAL INSURANCE COMPANY, A CORPORATION, THIRD-PARTY PLAINTIFF,
v.
CONSOLIDATED MUTUAL INSURANCE COMPANY, AN INSURANCE CORPORATION, THIRD-PARTY DEFENDANT.
Superior Court of New Jersey, Chancery Division.
Decided June 12, 1969.
*112 Messrs. Cummis, Kent & Radin, attorneys for plaintiff Vornado, Inc. (Mr. David N. Samson appearing).
Messrs. Michels, Schwartz & Maher, attorneys for defendant Liberty Mut. Ins. Co. (Mr. Edward R. Schwartz appearing).
Messrs. Lieb & Teich, attorneys for defendant Consolidated Mut. Ins. Co. (Mr. Donald Berlin appearing).
*113 HERBERT, J.S.C.
All three parties have moved for summary judgment. Insurance coverage is the basic question. On April 21, 1964 Mrs. Irene Vetro, while shopping at Vornado's store in Kearny, allegedly fell and suffered injuries. The incident was reported promptly to defendant Consolidated, which was then Vornado's liability insurance carrier. An investigation by Consolidated followed and included taking statements from two employees at the store, an interview with Mrs. Vetro (though without a written statement), a questionnaire to Mrs. Vetro's doctor, and obtaining information about her employment record. Early in December 1964 Vornado forwarded to Consolidated a claim letter from Mrs. Vetro's lawyer. Consolidated answered that by sending out a form giving the name of its man in charge of the claim and suggesting discussions about adjustment. To this the attorney responded by stating that he was waiting for a report and would be in contact with Consolidated later. Thereafter Consolidated heard nothing more about the case from anyone prior to May 25, 1966. The period of the statute of limitations apparently having run without suit being started  as Consolidated thought  the file was closed in due course.
In October 1965 Mrs. Vetro started suit. Her attorney of record was the same one who had exchanged communications about her case with Consolidated. The complaint contained an error which led to others, and the whole group of errors led to the present case. Mrs. Vetro's fall in the store was alleged to have happened on August 21, 1964. By that date defendant Liberty Mutual was Vornado's insurance carrier. Mr. Matusik, Vornado's insurance manager, being unaware of the prior history of the Vetro claim, relied on the date in the complaint and sent it to Liberty Mutual for defense. That company assumed responsibility, turned the papers over to its regular attorney and began routine investigation and trial preparation. No objection to the application of its policy was raised by Liberty until October 1967, when two of its men called upon Vornado's insurance manager, stated that *114 the Vetro accident really occurred before Liberty's policy had been issued, and presented a draft of letter for Vornado to send to Consolidated turning the case back to that company. The suggested letter was not sent, but on October 17, 1967 another one was, and suit papers were delivered to Consolidated so that it might take over the defense. This Consolidated refused to do, giving two reasons: failure of Vornado to notify Consolidated promptly of the Vetro suit, and Liberty's continued defense of that suit without objection for more than a year after learning that the accident happened in April 1964.
After disclaiming responsibility Liberty sought to withdraw from the defense of the Vetro suit. This case was then started and an order to show cause with restraints against Liberty's withdrawal was issued on January 4, 1968, followed by an interlocutory injunction, so that Liberty through its attorneys is still in charge of the defense of the Vetro action, an action which apparently can be reached for trial in the Law Division in the near future.
After getting the Vetro case Liberty quite promptly began to turn up information indicating that the alleged accident had occurred in April 1964 rather than in August 1964. From a central index bureau it was learned that a Vetro claim had been presented to Consolidated, and on or about May 25, 1966 Liberty addressed an inquiry about that to Consolidated. The latter answered promptly, but no one at Liberty realized at the time that there was only one mishap alleged by Mrs. Vetro. In or shortly before the summer of 1966 she furnished answers to interrogatories, one of the answers being that the accident occurred on April 22, 1964, a mistake by one day. After the interrogatories were answered her deposition was taken on July 19, 1966, and during the questioning both Liberty's attorney and Mrs. Vetro adopted the April 22 date as the correct one. By November 17, 1966 Mr. Cole, of Liberty's claims department, prepared a two-page memorandum on the Vetro case, at the end of which he said:
*115 "The question as to the date of the accident seems to have been resolved at least in the plaintiff's mind, since now interrogatories state that the accident occurred on April 22, 1964 and not the original date indicated, August 21, 1964."
Thus Liberty knew, for more than a year prior to its attempt to withdraw from the case, that the Vetro claim was based on an alleged fall in April 1964. It also knew, of course, the period of coverage specified in its own policy. Apparently no one drew the obvious conclusion, and Liberty went forward with the defense of the case until October 1967 without questioning its responsibility to defend and pay.
Vornado demands judgment against either Liberty Mutual or Consolidated. By the first count of its complaint it alleges that it is entitled to judgment against Liberty on grounds of estoppel arising out of Liberty's actual defense of the Vetro case. The second count of the complaint alleges that the accident happened during the period of Consolidated's policy and that Consolidated should, therefore, be held responsible. Both insurance companies argue for exemption from liability and, in effect, for imposition of liability on the other.
The contention of Vornado on this motion is that Liberty should be held liable on principles of estoppel which were stated in Merchants Ind. Corp. v. Eggleston, 37 N.J. 114 (1962), and which were stated and applied in Sneed v. Concord Ins. Co., 98 N.J. Super. 306 (App. Div. 1967). Vornado's arguement against Consolidated is based upon Cooper v. Government Employees Ins. Co., 51 N.J. 86 (1968), and urges that the two-year delay in forwarding Mrs. Vetro's summons and complaint does not relieve Consolidated of responsibility in spite of a policy provision requiring that such papers be forwarded "immediately," this result flowing from Consolidated's failure to make a showing of a likelihood of appreciable prejudice from the delay. Reading Merchants Ind. Corp. v. Eggleston and Sneed v. Concord Ins. Co. against Cooper points up differences between prejudice as defined in the estoppel cases and that likelihood of prejudice declared in Cooper to be a necessary element of proof by an insurance *116 company seeking to avoid responsibility for an accident on grounds of late notice. Merchants Ind. Corp. v. Eggleston includes (37 N.J., at p. 127) a strong statement about the importance to an insured of having continuous control of litigation if he is to be asked to bear, without the benefit of insurance, the burden of an ultimate judgment in that litigation. Concerning Merchants Ind. Corp v. Eggleston, the court said in Sneed:
"In any event, as indicated above, we are satisfied that Eggleston adumbrates the principle that without an effective nonwaiver agreement an insurer who exercises its policy right exclusively to control the handling of a claim against its insured for a substantial period after it knows it has a basis for denial of coverage will be estopped thereafter to disclaim liability on the policy. Prejudice to the insured will be assumed because the `course cannot be rerun' so as to determine whether the insured would in fact have fared better on his own if the insurer had disclaimed promptly." (98 N.J. Super., at p. 320)
By contrast, in Cooper, where there had been a failure to comply with a provision requiring prompt notice of an accident, the defendant insurance company was held liable, the court saying:
"The insurance contract not being a truly consensual arrangement and being available only on a take-it-or-leave-it basis, and the subject being in essence a matter of forfeiture, we think it appropriate to hold that the carrier may not forfeit the bargained-for protection unless there are both a breach of the notice provision and a likelihood of appreciable prejudice. The burden of persuasion is the carrier's." (51 N.J., at p. 94)
Before the Cooper case was decided in January 1968 the test of prejudice was the same, or substantially the same, for both sides of this problem. In that state of the law it is interesting that on facts like those of the present case an insurance company in the position of Consolidated was held not liable, and a carrier in the position of Liberty was held responsible on grounds of estoppel, for a claim which arose during the stated period of the other company's policy. Ebert v. Balter, 74 N.J. Super. 466 (App. Div. 1962), and Ebert v. Balter, 83 N.J. Super. 545 (Cty Ct. 1964).
*117 In the case before me there is not the slightest suggestion of inability to pay, but if I could imagine hopeless insolvency on the part of Consolidated, I would conclude that Vornado is entitled to a judgment against Liberty requiring that company to defend and pay; and if I could imagine hopeless insolvency on the part of Liberty, there would be no difficulty in holding Consolidated responsible for defending the Vetro suit from today on and for paying any judgment that might be obtained by Mrs. Vetro. Here, however, the real choice is between two solvent insurance carriers.
If an insurance company takes charge of a suit which is not covered by its policy and continues to defend after acquiring knowledge of facts indicating lack of coverage, the party who should have had charge of the case from the beginning has been deprived of the opportunity to handle his own defense. If that party is the insured, prejudice to him will be assumed under our law as it now stands (Merchants Ind. Corp. v. Eggleston; Sneed v. Concord Ins. Co.) and such prejudice is a necessary element of the rule of estoppel which requires the insurance company to continue bearing the responsibility for the case which it previously assumed. From the point of view of Consolidated in the present case it may be asked, if prejudice be assumed toward the holder of a policy of insurance (which does not cover the particular claim), why should it not be assumed similarly on the same basic facts toward any party, even another insurance company, who has been deprived of the opportunity to defend a case which should have been in its hands from the beginning? In deciding whether to apply principles of estoppel, it is difficult to draw a logical distinction between prejudice to an insured who has not been allowed to defend his own case and prejudice to another insurance company which has not been allowed to handle its own case. However, I think the decision here should go against Consolidated.
The rule of Cooper and the rule of estoppel which was applied in Sneed were both developed to give holders of insurance policies the benefit of insurance protection in situations *118 where unfairness would have resulted from cutting off the protection. In the future it may be that an insured who seeks to make an insurance company continue the defense of a case on grounds of estoppel will, as a by-product of Cooper, be required to show "a likelihood of appreciable prejudice" rather than having prejudice assumed; but whether that change in our law comes about or not, I think the Cooper rule should be extended to include Liberty's position in the present case. Liberty merely assumed an obligation which Consolidated contracted for. The contract should outweigh the assumption. Absent a showing of prejudice as called for by Cooper, the Consolidated company, in spite of the late notice of suit, should be held to its contract to defend and pay and should not shift the burden of performance to Liberty on grounds of estoppel; and I so hold.
The record on this motion has included depositions and exhibits as well as affidavits. Except for pointing out that it was ignorant of the Vetro suit for two years and during that time had no opportunity to defend, prepare for trial and endeavor to settle, Consolidated has pointed to no specific elements of prejudice. Yet it argues that there should be a trial; that facts bearing upon the question of prejudice may then emerge. In this respect Consolidated is like a defendant in a tort action who has no affirmative proof of contributory negligence but hopes that the testimony of plaintiff's witnesses may furnish the proof.
Proof relating to prejudice affecting Consolidated would almost certainly have to be found in the acts or omissions of Liberty's employees and attorneys. Among the depositions are those of three of Liberty's men. I find nothing to indicate that there were any missteps or lost opportunities in handling the Vetro suit. It appears to have been given routine and adequate attention. There is nothing to show that Consolidated would have done any better with the defense than Liberty has done. Though summary judgment is a remedy surrounded by strict limitations  as made plain in many appellate decisions  I have concluded, with some *119 hesitation, that Consolidated is not entitled to a trial merely for the purpose of exploring further the question of possible prejudice. I am somewhat fortified in this by Allstate Ins. Co. v. Grillon, 105 N.J. Super. 254 (App. Div. 1969). The case is one indication that the rule of Cooper will be forcefully applied, since the Appellate Division took the somewhat unusual course of reversing on the facts the trial court's determination (101 N.J. Super. 322) that a likelihood of appreciable prejudice, arising from failure to forward suit papers, had been shown.
There will be a summary judgment declaring that Consolidated is not relieved of the obligations to defend and pay as contained in its policy, and directing it to take responsibility from the date of the judgment for the defense of the Vetro suit and to pay, subject to the limits of its policy, any judgment that may be obtained therein.
Vornado moves for judgment requiring Consolidated or Liberty, or both, to pay its legal expenses. This is done although the amended complaint contains no demands for damages. Vornado compares its position to that of an insured who, after a disclaimer, defends his own case and then brings a successful action for breach of the policy of insurance, including in that action a claim for all expenses connected with the defense of the claim which the insurance company should have defended. The technical obstacle in the way of an award is that Vornado has not defended the Vetro case; it has merely brought its own suit to enforce its rights to have that case defended by Consolidated, or Liberty. Vornado is not entitled to an allowance to cover the expenses of this action. Liberty also seeks an award for legal expenses against Consolidated. That portion of Liberty's motion will be denied. Liberty has defended the Vetro case, but got into that through a mistake for which Consolidated is not chargeable and then continued because of its own failure to realize the significance of the facts before it. I conclude it was a volunteer and should bear its own expenses. Though it continued as the defending agent under an interlocutory order *120 in this cause, I think that was an appropriate extension of its voluntary defense efforts for the purpose of maintaining the status quo, and that Consolidated should not be responsible even for the expenses of the period following Liberty's disclaimer.
If the attorneys for Consolidated think it necessary, the judgment can provide that the relief given to Liberty is subject to the condition that Liberty and its attorneys will turn over to Consolidated all defensive material for the Vetro suit which they have.