**NOT FOR PUBLICATION WITHOUT THE
APPROVAL OF THE APPELLATE DIVISION**

This opinion shall not "constitute precedent or be binding upon any court." Although it is posted on the internet, this opinion is binding only on the parties in the case and its use in other cases is limited. R. 1:36-3.

SUPERIOR COURT OF NEW JERSEY
APPELLATE DIVISION
DOCKET NO. A-2835-20

REPUBLIC FRANKLIN
INSURANCE COMPANY,

     Plaintiff-Respondent,

v.

FICKE & ASSOCIATES, LLC,

     Defendant-Appellant,

and

SITLAX REALTY, LLC,

     Defendant-Respondent.

_____

        Submitted September 19, 2022 – Decided September 30, 2022

        Before Judges Mawla and Smith.

        On appeal from the Superior Court of New Jersey, Law Division, Middlesex County, Docket No. L-3406-19.

        The Killian Firm, PC, attorneys for appellant Ficke & Associates, LLC (Eugene Killian, Jr. and Dimitri Teresh, on the briefs).

Marshall, Dennehey, Warner, Coleman & Goggin, attorneys for respondent Republic Franklin Insurance Company (David D. Blake and Walter F. Kawalec, III, on the brief).

PER CURIAM

Appellant Ficke & Associates, LLC (Ficke) appeals from two April 27, 2021 orders granting respondent Republic Franklin Insurance (RFI) summary judgment and denying Ficke's cross-motion for summary judgment, and a May 3, 2021 order denying Ficke's motion to compel discovery. We affirm.

Sitlax Realty, LLC is a real estate company. Ficke is an insurance brokerage that provided Sitlax with coverage. Beginning in 2007, RFI issued Ficke a series of claims made errors and omissions (E&O) professional negligence policies. The period in question pertains to the 2016 and 2019 policy period. RFI issued policies to Ficke from January 22, 2016 through January 22, 2017, and again from January 22, 2019 to January 22, 2020.

RFI's 2016 policy read as follows:

> SECTION I – DEFINITIONS
>
> . . . .
>
> 2. "Claim" means a written demand or written notice, including service of a subpoena, "suit" . . . received by one or more insureds which alleges a "wrongful act" or asks for money or services.

. . . .

8. "Loss" means any amount which an insured becomes legally obligated to pay as damages for any "claim" arising out of a "wrongful act" to which this insurance applies and shall include judgments and settlements. . . .

. . . .

11. "Suit" means a civil proceeding in which damages because of "loss" are alleged. . . .

. . . .

13. "Wrongful act" means any negligent act, negligent error, negligent omission, or "personal injury" committed by an insured in the lawful performance of their duties for you.

SECTION II – COVERAGE

1. Insuring Agreement

> a. We will pay on behalf of the insured all "loss" to which this insurance applies.
>
> We will have the right and duty to defend the insured against any "suit" seeking such "loss" even if the allegations of the "suit" are groundless, false, or fraudulent. However, we will have no duty to defend an insured against any "suit" to which this insurance does not apply. . . .

. . . .

3

c. A "claim" will be considered first made at the earliest of the following times:

(1) When notice of such "claim" is received and recorded by any insured or by us, whichever comes first.

(2) When we make settlement in accordance with paragraph 1.a. above.

(3) On the date during the "policy period" when the first written notice of any facts or circumstances which may subsequently give rise to a "claim" which would be insured hereunder is received by us from an insured. Any "claim" made against an insured arising out of such facts or circumstances after the date of receipt of such notice by us will be considered to have been made on the date we received the first notice of facts or circumstances. Only the policy in force on that date and no other shall apply to all "claims" from such facts or circumstances.

d. All "claims" based on or arising out of a single "wrongful act" or all "interrelated wrongful acts" of one or more insureds shall be deemed to be one "claim" and to have been made at the time the first of those "claims" is made against any insured.

. . . .

SECTION VI – CONDITIONS

1. Duties In The Event Of Wrongful Act, Claim Or Suit

4

a. You must see to it that we are notified in writing as soon as practicable of any "wrongful act" which may result in a "claim." To the extent possible, notice should include:

> (1) How, when and where the "wrongful act" took place;

> (2) The names and addresses of persons involved in the "wrongful act" and witnesses; and

> (3) The nature of the harm resulting from the "wrongful act".

b. If a "claim" is received by an insured, you must:

> (1) Immediately record the specifics of the "claim" and the date received; and

> (2) Notify us as soon as practicable.

> You must see to it that we receive written notice of the "claim" as soon as practicable.

c. You and any other involved insured must:

> (1) Immediately send us copies of any demands, notices, summonses, subpoenas or legal papers received in connection with the "claim" or "suit";

. . . .

d. No insured will, except at that insured's own cost, voluntarily make a payment, assume any

obligation, or incur any expense without our consent.

In 2010, Sitlax leased property to DAF Greenwood USA, LLC, (DAF). The lease contained a provision requiring DAF to maintain $1 million of property insurance.

Ficke advised Sitlax it procured the necessary insurance for DAF through Sentinel Insurance Company, naming Sitlax as the additional insured under the lease terms. Ficke gave Sitlax a Certificate of Insurance indicating $300,000 for "damage to rented premises." It also provided insurance from Hartford Insurance Company of the Midwest and advised Sitlax the necessary insurance was procured for DAF to conform with the lease requirements.

In 2013, DAF breached the lease and Sitlax evicted it. Sitlax discovered DAF caused damage to the property during the tenancy. During this period, Sitlax had representatives visit the property and knew about the damage. Ficke repeatedly advised Sitlax the damage was covered.

Sitlax sold DAF's equipment remaining on the property to cover the damage but did not recover the entirety of the losses. Therefore, Sitlax turned to its insurance, seeking coverage from Sentinel and Hartford. Sentinel and Hartford declined coverage in 2015 and 2016, respectively.

On November 9, 2016, Sitlax sued Sentinel, Hartford, DAF, and Ficke. In addition to the claims raised against the other parties, Sitlax alleged professional negligence against Ficke, including for failing to "procure proper insurance coverage for Sitlax . . . to protect Sitlax in the event of damage to the [p]roperty caused by DAF . . . ." Sitlax also alleged a breach of fiduciary duty against Ficke "by failing to act in a manner consistent with the best interests of Sitlax[,]" and unjust enrichment in the form of "fees, commissions or other compensation" Ficke received by inducing Sitlax to entering the insurance agreements.

Ficke did not answer the complaint, allowing Sitlax to obtain a default judgment and then a writ of execution and levy against Ficke's bank account. Ficke moved to vacate the default judgment and extend the time to file an answer. In support of the motion, Ficke's owner, Arun Parikh, certified to his "personal friendship with [Sitlax's owner] Jitendra Sitarambahi Patel . . . ." Parikh acknowledged he was served with the complaint at Ficke's office via certified mail.

After receiving the complaint, Parikh claimed he spoke with Patel who "agreed that Ficke was named in the [c]omplaint only because it was the brokerage company involved in the subject transaction of the lawsuit, not because . . . Patel was seeking any legal recourse against Ficke." Parikh claimed

A-2835-20

he and Patel understood Hartford would be handling the defense, and so he did not take further action regarding the lawsuit. Parikh recalled being served with other legal documents after this meeting, but he did not remember the nature of the documents or when they were served.

Parikh stated after default judgment was entered, he called Patel who stated "he had no intention of having the [judgment amount] withdrawn from Ficke's bank account," and Parikh should "let the process run its course." Based on these representations, Parikh "did not believe [he] needed to seek legal advice or otherwise respond to Sitlax's [c]omplaint, the request for default judgment, or any other legal documentation . . . received in the mail." Parikh further certified he spoke to Patel in September 2018 and Patel agreed to vacate the default judgment.

In October 2018, Patel submitted a certification in support of Sitlax's opposition to Ficke's motion to vacate default judgment. He stated he told Parikh about the damage to the property during DAF's tenancy and Parikh visited the property to see the damage himself. He stated Parikh assured him the damage was covered.

After Hartford and Sentinel denied coverage, Patel told Parikh counsel advised him to file a lawsuit against the carriers and Ficke, and Parikh should

get an attorney. Patel claimed Parikh said, "do what you have to do." He denied ever telling Parikh he would not pursue the claims against Ficke. Patel refuted Parikh's assertion Hartford would handle the claim because Patel "hired an attorney to pursue the carriers for breach of contract and . . . Ficke, for broker malpractice."

Patel maintained he did not advise Parikh not to answer the complaint or respond to legal correspondence, but instead consistently advised him to get an attorney, and Parikh always claimed Hartford would handle the dispute. He told Parikh the sheriff executed the judgment and "the judgment was running through the process." Patel further authorized his attorney to file the necessary motions to execute the judgment. When Parikh called Patel asking him not to execute on the funds in Ficke's bank account, Patel advised him to contact his attorney.

Patel stated Parikh admitted he did not pay attention to any of the letters sent by Patel's attorney during this period. He certified "from talking with Parikh that Parikh received all correspondence from [Patel's] attorney and chose to ignore both the letters and orders. . . . His actions (or lack thereof) and decisions on how to respond to this lawsuit are all his own."

The court granted Sentinel and Hartford summary judgment dismissing them from the litigation. The court also granted Ficke's motion to vacate the

default judgment but denied its subsequent motion to dismiss Sitlax's complaint with prejudice for failure to state a claim.

The parties stipulated to dismissal of Sitlax's complaint against Ficke without prejudice. Sitlax refiled its complaint, alleging professional negligence and breach of fiduciary duty. RFI filed a complaint for declaratory judgment against Ficke and Sitlax for an order declaring it had no duty to defend or indemnify Ficke in the Sitlax lawsuit. RFI cited the coverage and conditions section of its policy and claimed Ficke's failure to provide it with notice of the lawsuit for more than two years after service of the suit precluded RFI's obligation to defend and indemnify Ficke. The complaint noted RFI retained counsel to defend Ficke, subject to a reservation of rights (ROR) pending a decision in the declaratory judgment action.

The parties conducted discovery, after which each filed motions for summary judgment. Ficke also filed a motion to compel discovery. RFI's summary judgment motion enclosed an ROR letter and copies of the signed certified mail receipts verifying service of the complaint and the letter on Ficke. In response, Ficke filed a certification from Parikh alleging he never saw the ROR letter and the signature on the certified mail receipt did not belong to a Ficke employee.

A-2835-20

RFI alleged it first received notice of Sitlax's 2016 lawsuit against Ficke in a January 2019 email, and received official notice on March 25, 2019, when Ficke filed a notice of loss. Meanwhile, from 2016-18, Ficke submitted three renewal applications for insurance to RFI. The 2016 application asked: "Within the last [five] years, . . . have any [E&O] claims or incidents been made against the agency, any of its past or present personnel, or any predecessor agency?"; "Are there any known circumstances or incidents that may result in an [E&O] claim being made against the agency or agency personnel?"; "Within the last [five] years, have any past or present agency personnel been the subject of complaints filed, investigations, and/or disciplinary action undertaken by any insurance or other regulatory authority or been convicted of a felony?" Ficke answered "no" to each question. The November 2017 and 2018 renewal applications asked: "Is the agency management or ownership aware of any circumstance, allegation or incident which may result in an E&O claim made against the agency but not yet reported to your E&O carrier?" Ficke again indicated "no."

RFI's ROR letter stated it retained counsel for Ficke but "will continue to investigate whether [RFI had] been prejudiced by the late notice of [the 2016] lawsuit." The letter further stated:

[RFI] reserves all of its rights and defenses under and pursuant to the policy of insurance upon which these claims have been made. We specifically reserve our right to rely upon any and all terms, provisions, limitations or exclusions contained in the policy of insurance, as well as any other disclaimers or affirmative defenses which may exist under the contract or at law, whether stated herein or not.

RFI issued a second ROR letter refuting Ficke's assertion that RFI was obligated to pay attorney's fees to Sitlax associated with the motion to vacate the default judgment, noting pursuant to the first ROR letter, RFI had "no obligation to pay for any fees ordered prior to its first notice of the claim."

Ficke argued its claim did not ripen until the dispute with Sentinel and Hartford was adjudicated. The judge rejected this argument finding "it's not [Ficke's] right under the policy to make that determination. It's the carrier. That's why they want to have control as early on as possible to determine how best to defend this. It's not up to the insured to make such a determination." The judge further noted there was no dispute Ficke failed to disclose the existence of a claim to RFI for more than two years. The judge concluded summary judgment in RFI's favor was appropriate, notwithstanding that discovery was not concluded, because there was no issue of material fact requiring resolution that would change the outcome.

A-2835-20

The judge also found the ROR letters were proper and the certified mail receipts objectively proved service of the letters on Ficke. The judge concluded Ficke's claim accrued in 2016 and Parikh made misrepresentations on the renewal applications by indicating there were no claims accrued from 2017-19.

The motion judge granted RFI summary judgment and denied Ficke's cross-motion for summary judgment. He denied Ficke's motion to compel discovery as moot.

Ficke raises the following arguments on appeal:

> I. RFI IS ESTOPPED FROM DISCLAIMING COVERAGE AS A MATTER OF LAW.
>
>> a. The ROR Letter In The Instant Matter Was Not Properly Served on Ficke.
>>
>> b. Ficke Did Not Expressly Agree To The ROR Letter As To Allow RFI To Disclaim Coverage.
>>
>> c. Additional Genuine Issues Of Material Fact Exist As To Notice Provided To RFI By Ficke.
>>
>>> 1. The claims against Ficke accrued after summary judgment was granted in 2016 Sitlax litigation.
>>>
>>> 2. Sitlax advised Ficke of no ripe claims in the 2016 Sitlax litigation.
>>
>> d. Outstanding Discovery Remains Which Required The Dismissal of RFI's Motion For Summary Judgment.

## I.

Summary judgment is appropriate "if the pleadings, depositions, answers to interrogatories and admissions on file, together with the affidavits, if any, show that there is no genuine issue as to any material fact challenged and that the moving party is entitled to a judgment or order as a matter of law." R. 4:46-2(c). The determination requires the motion judge consider "whether the competent evidential materials presented, when viewed in the light most favorable to the non-moving party, are sufficient to permit a rational factfinder to resolve the alleged disputed issue in favor of the non-moving party." Brill v. Guardian Life Ins. Co., 142 N.J. 520, 540 (1995). "[W]hen the evidence 'is so one-sided that one party must prevail as a matter of law,' . . . the trial court should not hesitate to grant summary judgment." Ibid. (quoting Anderson v. Liberty Lobby, Inc., 477 U.S. 242, 252 (1986)). "[W]e review a trial court's grant of summary judgment de novo[,] under the same standard as the trial court." Templo Fuente De Vida Corp. v. Nat'l Union Fire Ins. Co., 224 N.J. 189, 199 (2016).

## II.

Ficke disputes the motion judge's findings that it failed to give RFI timely notice of the claims brought against Ficke. It argues the dispute regarding the

A-2835-20

notice provision in the policy was a general issue of material fact and summary judgment was improperly granted.

As a general proposition, courts should give an insurance policy's words "their plain, ordinary meaning." Zacarias v. Allstate Ins. Co., 168 N.J. 590, 595 (2001). "If the language is clear[,]" the inquiry ends there. Chubb Custom Ins. Co. v. Prudential Ins. Co. of Am., 195 N.J. 231, 238 (2008). "[I]n the absence of an ambiguity, a court should not 'engage in a strained construction to support the imposition of liability' or write a better policy for the insured than the one purchased." Ibid. (quoting Progressive Cas. Ins. Co. v. Hurley, 166 N.J. 260, 272-73 (2001)).

If contract terms are susceptible to at least two reasonable interpretations, the terms are ambiguous. Ibid. "[A]mbiguous language in an insurance policy is often construed in favor of the insured." President v. Jenkins, 180 N.J. 550, 563 (2004) (citing Doto v. Russo, 140 N.J. 544, 556 (1995)). The "fundamental rules of insurance contract interpretation require [the court] to read coverage provisions broadly, and to interpret ambiguities 'to comport with the reasonable expectations of the insured, even if a close reading of the written text reveals a contrary meaning . . . .'" Auto Lenders Acceptance Corp. v. Gentilini Ford, Inc.,

181 N.J. 245, 269 (2004) (quoting <u>Zacarias</u>, 168 N.J. at 595) (internal citations omitted).

Here, the dispute regards the language of RFI's "claims made" policy provision, which required Ficke to notify RFI of a claim "as soon as practicable." In discussing the important distinction of a claims made policy versus an occurrence policy, our Supreme Court stated:

> Both "claims made" and "occurrence" policies contain reporting requirements, but the importance and terms of those requirements differ. The distinctive roles that reporting requirements play in "claims made" versus "occurrence" policies not only addresses the basic difference between the two policies, but informs our judicial interpretation of those requirements.
>
> . . . . "Claims made" policies commonly require that the claim be made and reported <u>within</u> the policy period, thereby providing a fixed date after which the insurance company will not be subject to liability under the policy. [<u>Sparks v. St. Paul Ins. Co.</u>, 100 N.J. 325, 330-31 (1985)]; 7 <u>Couch on Insurance</u> 3d § 102:22 (2013). "Claims made" policies also tend to have an additional "notice of claim" provision "phrased in terms of the insured notifying the insurer of a claim or potential claim 'promptly' or the like[.]" 13 <u>Couch on Insurance</u> 3d § 186:13 (2009).
>
> The prompt notice requirement and the requirement that the claim be made within the policy period in "claims made" policies "maximiz[e] the insurer's opportunity to investigate, set reserves, and control or participate in negotiations with the third party asserting the claim against the insured" and "mark the point at

which liability for the claim passes to an ensuing policy, frequently issued by a different insurer, which may have very different limits and terms of coverage." Id.

[Templo Fuente, 224 N.J. at 202-03 (alterations in original).]

In reading a policy, we have stated "'as soon as practicable' means 'within a reasonable time.' . . . [T]hat determination of what is 'as soon as practicable' does not necessarily depend on mere time lapse but must be adjudged in the light of the particular factual situation presented." Ebert v. Balter, 74 N.J. Super. 466, 472-73 (App. Div. 1962).

We reject Ficke's reading of the policy. The policy states a claim includes "a written demand or written notice, . . . service of a subpoena, 'suit' . . . received by one or more insureds which alleges a 'wrongful act' or asks for money or services." "Suit" is defined as "a civil proceeding in which damages because of 'loss' are alleged." "Wrongful act" is "any negligent act, . . . error . . . [or] omission . . . ." A plain reading of the policy language reveals no credible dispute whether the 2016 Sitlax complaint against Ficke met the definition of a suit.

Moreover, we reject Ficke's argument the policy language of "as soon as practicable" means "as soon as is ripe." The policy states Ficke "must see to it

17

that [RFI is] notified in writing as soon as practicable of any 'wrongful act' which may result in a 'claim.'" The 2016 complaint clearly qualified as a claim stemming from a wrongful act requiring Ficke to notify RFI of the suit in writing as soon as practicable. The policy language is clear and unambiguous and contains no language regarding the accrual of a claim before Ficke had to notify RFI.

Ficke failed to inform RFI of the claim against it within a reasonable time. As the motion judge found, Ficke waited three years and renewed its insurance three times, certifying there were no claims made against it. Ficke's unreasonable conduct is measured by the fact it acted only after a default judgment entered, depriving RFI of its ability to conduct the defense. For these reasons, the motion judge properly found summary judgment in favor of RFI based on the policy's clear and unambiguous language.

## III.

Ficke raises several arguments regarding the propriety of the ROR letter, including: it never received the letter; RFI withheld the letter and only produced during the summary judgment proceedings; the second ROR letter never reasserted the terms of the first one; there was no agreement between RFI and Ficke regarding the rights reserved by RFI; and the motion judge found facts

18

regarding the service of the letter based on a disputed factual record. We are unpersuaded.

"Upon the receipt from its insured of a claim or notification of an incident that may give rise to a claim, an insurer is entitled to a reasonable period of time in which to investigate whether the particular incident involves a risk covered by the terms of the policy." Griggs v. Bertram, 88 N.J. 347, 357 (1982). Once the insurer investigates, it "is under a duty promptly to inform its insured of its intention to disclaim coverage or of the possibility that coverage will be denied or questioned." Ibid.

"The classic mode of reservation is a nonwaiver agreement between the insured and the insurer." Merchs. Indem. Corp. v. Eggleston, 37 N.J. 114, 126 (1962). An insurer's unilateral declaration of rights is not enough to establish consent. Sneed v. Concord Ins. Co., 98 N.J. Super. 306, 314 (App. Div. 1967). The letter must contain language "apprising the policy-holders . . . they were at liberty to accept or reject the company's plan of procedure." Id. at 311. "The agreement may appear in an exchange of letters" or "may also be inferred from the insured's failure to reject the carrier's offer to defend with a reservation of rights." Merchs. Indem. Corp., 37 N.J. at 126. "The rationa[]le is that, by reason

of the relation of the parties, the insured is obliged to speak in response to the offer, and hence . . . silence spells out consent." Ibid.

It is "universally agreed . . . the defense of an action against the insured is incompatible with a denial of liability unless the carrier has reserved the issue of its liability by appropriate measures." Ibid. "Control of the defense is vitally connected with the obligation to pay the judgment. Carriers contract for control, and to that end require notice of [claims] and prompt submission of suit papers." Id. at 127. "[I]f a carrier wishes to control the defense and simultaneously reserve a right to dispute liability, it can only do so with the consent of the insured." Ibid.

An insurance carrier may be estopped from denying coverage despite a clear policy provision excluding the claim from coverage. Griggs, 88 N.J. at 355-56.

> The strongest and most frequent situation giving rise to such an estoppel is one wherein a carrier undertakes to defend a lawsuit based upon a claim against its insured. If it does so with knowledge of facts that are relevant to a policy defense or to a basis for noncoverage of the claim, without a valid reservation of rights to deny coverage at a later time, it is estopped from later denying coverage.
>
> [Id. at 356.]

"The rationale behind estoppel in this context is . . . once the insurer has acknowledged the claim and assumes control of the defense, the insured is justified in relying upon the carrier to protect it under its policy and to be responsible for any judgment against it." Ibid.

We are unconvinced estoppel applies here because RFI's ROR letter was sufficient and Ficke consented by acquiescence. Indeed, the ROR letter read:

> The . . . [E&O] policy will afford protection for any claims that meet the definition of "wrongful acts," "loss" and "suit" that are not otherwise excluded from coverage. However, [RFI] will not indemnify you for the allegation of unjust enrichment which is excluded from coverage based on the provisions outlined . . . above.
>
> [RFI] will offer to provide you a defense in this matter, and appoint Robert Gold of Gold Albanese Barletti & Locascio to defend you. You have the right to reject the offer and have counsel of your own choosing defend you, at your own expense.
>
> [(emphasis added).]

RFI promptly informed Ficke of its intention to disclaim coverage. The ROR letter clearly indicated it would defend Ficke, subject to reservation, because Ficke violated the policy's notice provision. When Ficke officially filed the notice of loss claim RFI sent a follow-up letter the next day expressly referencing the disclaimer in the first ROR letter.

21

RFI's ROR letter was not the sort of "unilateral declaration" discussed in Sneed.  Rather, the language informed Ficke of the right to reject the offer and proceed "at [its] expense."  Contrary to Ficke's argument, RFI did not assume the defense and then cease defending, warranting estoppel.  Rather, Ficke received proper notice and acquiesced to RFI's refusal of coverage.

The remaining arguments raised on appeal lack sufficient merit to warrant discussion in a written opinion.  R. 2:11-3(e)(1)(E).

Affirmed.

I hereby certify that the foregoing
is a true copy of the original on
file in my office.

CLERK OF THE APPELLATE DIVISION

A-2835-20