**Luther W. GREENWAY**

and

**2804 Nichols Avenue, S. E., t/a Walker's Tavern and Restaurant, Appellants,**

**v.**

**SELECTED RISKS INSURANCE COMPANY, Appellee.**

**No. 6704.**

District of Columbia Court of Appeals.

Argued Feb. 7, 1973.

Decided July 16, 1973.

---

3. Because of this disposition the remaining allegations of error need not be reached.

Leonard I. Rosenberg, Washington, D. C., for appellants.

Lee T. Ellis, Jr., Washington, D. C., with whom John A. Beck, Washington, D. C., was on the brief, for appellee.

Before REILLY, Chief Judge, GALLAGHER, Associate Judge, and QUINN, Associate Judge, Retired.

REILLY, Chief Judge:

This is an appeal from an order granting a motion for summary judgment in favor of an insurance company in a suit brought by appellants seeking a declaratory judgment to compel the carrier to comply with the terms of a liability insurance policy and provide appellants a legal defense in a tort action against the insured brought by a married couple, now pending in the United States District Court. As the facts are not in dispute, the only issue presented is whether the carrier's repudiation of its obligations under the policy was justified by an asserted failure on the part of the insured to give the timely notice prescribed by another term of the policy.

At the time this controversy arose, a neighborhood establishment called Walker's Tavern and Restaurant was covered by a policy issued by the carrier holding the proprietors harmless for liability up to the amount of $25,000 for any claim for injury to person or property incurred on the premises. The operator of the tavern was Luther W. Greenway, one of the insured and one of the appellants in this case.

Greenway's difficulties with his insurance company had their origin in an incident which occurred on November 15, 1969. Among the customers gathered at the bar that night were a Mrs. Thelma M. Schrader and a gentleman whose conversation she found insulting. A lady of formidable sensibility, by her own account, she picked up a telephone at 2 a. m. to complain to the police but was forcibly restrained from completing the call by the bartender. According to a complaint she later filed in the United States District Court, he accomplished this feat by seizing her with his left arm, an action she characterized as assault and battery.

Greenway did not learn of this until the next day. He also was told that the lady was claiming bodily injury from the manner in which her telephone call had been interrupted. Instead of notifying his insurance carrier of this potential claim, he offered to pay any medical expenses stemming from the incident. This he did on December 2, 1969, when he was presented with a bill for $205.54, covering items for medical and incidental expenses (including an attorney's fee).

Regarding the matter as closed, Greenway did not inform the insurance carrier of the incident until December 30—his illusions about the good faith of the claimant having just been shattered by a visit on Christmas Day from the husband of the aggrieved lady, who insisted that her condition was such that additional compensatory payments were imperative. It was not until January 26, 1970, that Greenway heard further from the carrier, when one of its investigators arrived to take a statement from him and the wife of the bartender. A few days later, February 6th, he received a letter from the insurance company stating that investigation and settlement negotiations would not proceed unless he signed an enclosed waiver—an instrument reserving to the carrier all its rights under the policy (including presumably its disclaimer right for lack of timely notice). Greenway again took no action

until May 4, 1970, when his counsel mailed to the carrier the executed "waiver" agreement and the papers just served upon him in the tort action by both the husband and wife, including a complaint for damages in the amount of $300,000.

On May 14, 1970, the carrier informed appellants that it refused to defend the suit because of a breach of the policy conditions, including failure to give notice to the insurer within a reasonable time after the incident which was the basis of the claim. It was this disclaimer that was challenged in the declaratory judgment suit, resulting in the judgment for the carrier, following cross motions for summary judgment by both sides.

Condition 4(a) of the insurance policy provides that "[i]n the event of an occurrence . . . notice . . . shall be given by or for the insured . . . as soon as practicable." Then Condition 5 of the policy states that no action shall be taken on the policy against the insurer unless ". . . as a condition precedent thereto, there shall have been full compliance with all the terms of the policy . . ." by the insured. The trial court held that the notice given the appellee was untimely and unreasonable, or "not as soon as practicable."

Our salient point of inquiry, therefore, is whether it can be said as a matter of law that the notice given did not comply with the terms of the contract of insurance.

■ The words "as soon as practicable" have uniformly been held to mean within a reasonable time in view of all the facts and circumstances of each particular case. 44 Am.Jur.2d Insurance § 1460 (1969); Annot., 18 A.L.R.2d 462 (1951). It is well established, moreover, that "efficient and economical liability insurance administration requires early knowledge of the claim in order that proper investigation may be made. Contractual provisions designed to secure this interest are, thus, to be given effect in the interest of the public

as well as that of the insurer." Waters v. American Automobile Insurance Co., 124 U.S.App.D.C. 197, 200, 363 F.2d 684, 687 (1966). Appellants do not take issue with *Waters,* the leading case in this jurisdiction, but cite authorities for the proposition that "an insured may, under a proper showing of circumstances, be excused for a delay or failure to notify [the] insurer of [an] accident or occurrence."

The cases relied upon by appellants, however, are clearly distinguishable on their facts. In one, the insured who failed to give prompt notice justifiably believed they were not involved in a particular accident and had not foreseen the possibility of a claim for damages, State Farm Mutual Automobile Insurance Co. v. Erickson, 5 Wash.App. 688, 491 P.2d 668 (1971); in another, there was apparently no injury from the accident and no reasonable ground for believing that an injury might ensue therefrom, Lennon v. American Farmers Mutual Insurance Co., 208 Md. 424, 118 A.2d 500 (1955).

■ In the case before us, Greenway was fully cognizant of the involvement of one of appellants' employees in the encounter with the aggrieved customer and obviously aware of the likelihood of a monetary claim. Therefore, while we are not unmindful of appellants' hesitancy to report the incident in light of the reluctance of many insurance companies to renew policies against which claims have been paid without substantial premium increases, we have found no authority for the proposition that an insured, fully aware of an incident giving rise to an insurable claim for damages, may wait 45 days prior to notifying his insurance carrier because of his own bona fide attempt to settle the claim.

We also note that one condition of the policy [4(c)] specifically provides that any voluntary payment by the insured, except for first aid at the time of the accident, shall be at his own cost which, parenthetically, means at his own risk.

Under the controlling authorities, we find no error in the trial court's conclusion, notwithstanding the absence of a showing by the carrier of any prejudice to itself as a result of the delay in its receiving notice. Waters v. American Automobile Insurance Co., *supra*, makes it abundantly clear that actual prejudice to the carrier is not a necessary element in the defense raised here. In this case, as in *Waters,* the liability policy contained a provision making compliance with the notice requirements expressly a condition precedent to liability on the part of the insurer.

Affirmed.