**David A. STARKS, Appellant,**

v.

**NORTH EAST INSURANCE COMPANY, Appellee.**

**No. 79–261.**

District of Columbia Court of Appeals.

Argued Sept. 27, 1979.

Decided Nov. 20, 1979.

Rehearing and Rehearing En Banc Denied Jan. 18, 1980.

Peter C. Ward, Washington, D. C., for appellant.

Joseph F. Cunningham, Washington, D. C., for appellee.

Before KELLY, FERREN and PRYOR, Associate Judges.

FERREN, Associate Judge:

Appellant David A. Starks, defendant in a negligence suit, brought a third-party action to compel his insurer, North East Insurance Co (North East), to defend the suit and indemnify him in the event of his liability for damages. The trial court granted summary judgment for North East, concluding as a matter of law that the insurance company would not be obligated to indemnify Starks because of his 13-month delay in notifying the company of the accident underlying the tort claim. We reverse and remand for jury consideration of the question whether Starks, under the circumstances, notified North East "as soon as practicable," as required by his insurance policy.

I.

The incident underlying the negligence claim took place on May 24, 1975, when Starks was in his yard at the side of the house. As William C. Petty, the regular mail carrier, approached the property, Starks' two dogs—which were usually confined to the back yard—managed to get through the gate on the other side of the house. At his deposition, Starks testified that the dogs ran out of the back yard, across the front yard, toward Starks (which was also in the direction of Petty, who was walking down the public sidewalk toward Starks' house). He further testified that Petty was "frightened" by the barking, "probably thought the dogs [were] coming toward him," was "hollering" at the dogs, began backing up, and then stumbled and fell off the curb. Starks also testified that the dogs never left the premises, that Petty never entered Starks' property, and that Starks never saw the dogs touch Petty.

At his own deposition, Petty offered a different version. Petty testified that he walked up to Starks' front porch to hand him the mail, then walked back down the steps as Starks went into the house. At that point Petty heard dogs bark, turned, and saw two dogs running toward him. Petty testified that he began to back up (while still on the walk in Starks' front yard), that the German shepherd jumped up on him, and that he fell with his back on the curb and his head in the street.

Starks and Petty substantially agree on the events that followed. A bus driver, some neighbors, Petty's supervisor, and another mail carrier all stopped to offer assistance. Starks offered to help Petty up, but Petty refused. Petty stated at the scene that the dogs had not bitten him, but that his back hurt. The supervisor drove Petty to Providence Hospital, a few blocks away, where x-rays were taken of Petty's back. After Petty had gone, Starks found a pair of sunglasses at the curb. Starks' daughter suggested that they might belong to Petty; Starks asked her to take them to the hospital. She found Petty in the emergency room and returned the glasses to him. She later told Starks that Petty had assured her that he had insurance and that the Starks family should not worry about the accident. Petty, however, denies saying anything other than "thank you" to Starks' daughter.

Petty did not return to his job as a mail carrier for 13 months, except for one week of light duty. Approximately six months after the accident, he contacted an attorney. Petty had no contact with Starks, between May 24, 1975 (the day of the fall) and June 16, 1976 (the date Starks received notice of a potential claim from Petty's attorney).

That same day, June 16, Starks notified North East of Petty's fall. Six months later, on December 13, 1976, Petty filed a negligence action against Starks. On January 18, 1978, Starks filed an amended third-party complaint against North East, asserting that North East had a duty to defend the suit and pay any resulting damages on Starks' behalf.[1] North East moved for a

---

1. Any coverage in Starks' homeowners' policy which may be applicable to Petty's claim is described in Section II, "Personal Liability (Bodily Injury and Property Damage)," wherein North East agrees to pay:

on behalf of the Insured all sums which the Insured shall become legally obligated to pay as damages because of bodily injury or property damage, and the Company shall defend any suit against the Insured alleging such

summary judgment on the ground that notice of Petty's fall "as soon as practicable" was a condition precedent to coverage, and that notice 13 months after the event failed to satisfy this condition as a matter of law.[2] The trial court granted North East's motion on January 26, 1979. Starks appealed.

## II.

Super.Ct.Civ.R. 56(c) provides that summary judgment shall be granted only "if the pleadings, depositions, answers to interrogatories, and admissions on file, together with the affidavits, if any, show that there is no genuine issue as to any material fact and that the moving party is entitled to a judgment as a matter of law." We therefore cannot sustain the judgment if there are disputed issues of material fact as to whether Starks' notice to the insurer was made "as soon as practicable," within the meaning of the policy. See *Franklin Investment Co. v. Huffman,* D.C.App., 393 A.2d 119, 121 (1978).

In *Greenway v. Selected Risks Insurance Co.,* D.C.App., 307 A.2d 753 (1973), this court considered an insurance policy similar to North East's and used the following test for timeliness of notice, which we apply here: "The words 'as soon as practicable' have uniformly been held to mean within a reasonable time in view of all the facts and circumstances of each particular case." *Id.* at 755. Under this test, reasonableness of notice is usually a question for the jury. E.

*g., Hendry v. Grange Mutual Casualty Co.,* 372 F.2d 222, 226 (5th Cir. 1967) (applying Florida law); *Norfolk & Dedham Mutual Fire Insurance Co. v. Cumbaa,* 128 Ga.App. 196, 198–99, 196 S.E.2d 167, 170 (1973). See *National Farmers Union Property & Casualty Co. v. Schmidt,* 219 N.W.2d 111, 115 (N.D.1974). Even in a case involving uncontradicted evidence, the question whether the insured has acted reasonably becomes a question of law only when reasonable persons can draw but one inference and that inference points "unerringly" to the conclusion that the insured has not acted reasonably under the circumstances. *Oregon Automobile Insurance Co. v. Fitzwater,* 271 Or. 249, 531 P.2d 894, 898 (1975) (en banc). *Accord, Hartford Fire Insurance Co. v. Masternak,* 55 A.D.2d 472, 474, 390 N.Y.S.2d 949, 951–52 (1977) (per curiam).

Nonetheless, *Greenway, supra,* was an exceptional case which justified summary judgment for the insurer. There was no dispute that the insured tavern owner knew within one day that a customer sought damages as a result of an alleged battery by the insured's employee; and yet the tavern owner apparently withheld notice to the insurer for six weeks, in order to avoid an increase in premiums. The insured, in fact, offered to pay the damages himself, and only notified the insurer when the customer made demands for additional payments. Under those circumstances, we held as a matter of law that the insured did not give

---

bodily injury or property damage and seeking damages which are payable under the terms of this policy, even if any of the allegations of the suit are groundless, false or fraudulent.

. . .

2. The second condition applicable to Section II coverage, *see* note 1 *supra,* is as follows:

Notice of Occurrence—Coverage E: When an occurrence takes place, written notice shall be given by or on behalf of the Insured to this Company or any of its authorized agents as soon as practicable. Such notice shall contain particulars sufficient to identify the Insured and also reasonably obtainable information respecting the time, place and circumstances of the occurrence, the names and addresses of the injured and of available witnesses.

According to the fifth condition applicable to Section II coverage:

No action shall lie against [the] Company unless, as a condition precedent thereto, the Insured shall have fully complied with all the terms of this policy applicable to Section II

. . . .

See *Waters v. American Auto. Ins. Co.,* 124 U.S.App.D.C. 197, 202, 363 F.2d 684, 689 (1966) (policy provision making notice a condition precedent to action against the insurer is valid and enforcible).

notice of the incident "as soon as practicable."

◼ *Greenway* does not justify summary judgment for North East simply on the ground that Starks did not give notice for 13 months after Petty's fall. Although prompt notice to the insurer is critical to proper investigation of claims,[3] a delay in notice does not automatically defeat coverage. Rather, we must consider all the facts and circumstances. *Greenway, supra* at 755. Specifically, we must ask whether a jury reasonably could conclude that Starks acted "within a reasonable time," *id.,* by notifying North East of Petty's fall no earlier than June 16, 1976.

### III.

Starks argues that there are three material questions of fact for a jury to answer in determining whether his delay in notifying North East was reasonable.

1. What could Mr. Starks reasonably have believed was his obligation under the insurance policy?
2. What could Mr. Starks reasonably have believed about the seriousness of Plaintiff's injury and his liability for it?
3. What could Mr. Starks reasonably have believed about the likelihood of a claim being made against him by Plaintiff?

◼ A. As to the first, the parties vigorously dispute whether Starks should have perceived the accident here as a reportable "occurrence" within the meaning of Section II, Coverage E, of the policy. *See* note 2 *supra.* Although that term is not defined, we believe the only reasonable meaning[4] would be an incident which "is sufficiently serious to lead a person of ordinary intelligence and prudence to believe that it might give rise to a claim for damages" covered by the policy. *Lennon v. American Farmers Mutual Insurance Co.,* 208 Md. 424, 430, 118 A.2d 500, 503 (1955).[5]

The question thus becomes, on the facts here: could the trial court have concluded, as a matter of law, that Starks should have perceived Petty's accident as a reportable occurrence, *i. e.,* as an incident which "might give rise to a claim for damages" covered by the policy? We therefore turn (in Parts B and C *infra*) to Starks' perceptions of the incident, in order to evaluate whether they would prompt a reasonable person to notify North East.[6]

B. With respect to the second proffered issue of material fact, Starks argues that a jury could find that he reasonably believed the incident was so trivial that it would not evolve into a claim, and that he accordingly

3. *See Waters, supra* at 200, 363 F.2d at 687; *Hartford Accident & Indem. Co. v. Day,* 359 F.2d 484, 486 (10th Cir. 1964); *United States Fidelity & Guar. Co. v. Gable,* 125 Vt. 519, 524, 220 A.2d 165, 169 (1966) (Shangraw, J., concurring).

4. In the absence of a definition in the insurance contract, a term should take on the meaning which would be attached to it by a reasonably intelligent non-party who is aware of operative usages. *See* 1 Restatement of Contracts § 20 (1932).

5. We do not accept the argument in Starks' brief favoring a more subjective standard, namely an evaluation focusing on perception of "a reasonable man with Mr. Starks' training and background."

6. The parties do not join issue on the question whether, under their respective views of the facts, Starks would be covered by the policy in the event he had given timely notice. In its brief, North East states that the policy provides "coverage, *inter alia,* against losses arising

from fire, lightning and other perils, as well as bodily injury to third parties on the insured's premises and approaches thereto." Consistent with this expansive view, Starks does not argue that he failed to give notice because of an initial belief that the policy did not cover the type or place of accident in this case. *Compare American Liberty Ins. Co. v. Soules,* 288 Ala. 163, 258 So.2d 872 (1972) (notice one year late found sufficient where parents had no reason to believe that their homeowners' policy would cover their son who accidentally shot his fiancee); *Pawtucket Mut. Ins. Co. v. Lebrecht,* 104 N.H. 465, 190 A.2d 420 (1963) (late notice constituted reasonable compliance with insurance policy; parents reasonably did not believe that homeowners' policy would cover injury from an assault committed by their son); *Mercado v. Rios,* 47 Misc.2d 589, 263 N.Y.S.2d 67 (1965) (upholding jury's finding that a reasonable person would not know whether a policy would cover an injury in the road as an "immediately adjoining way").

had no reason to report it until Petty, through counsel, sent the letter asserting the claim.

■ Courts have excused late notice when there apparently was no injury from an accident and no reasonable ground for believing that an injury might later evolve. *See Lennon, supra; Bennett v. Swift & Co.,* 170 Ohio St. 168, 163 N.E.2d 362 (1959). In this case, however, the undisputed facts do not support Starks' triviality excuse.[7] Starks saw Petty fall on his back on a concrete curb, refuse to get up for several minutes, and complain of serious back pain. Petty had to be helped to a car and went immediately to a hospital. Starks knew, moreover, through his daughter, that Petty was still at the hospital some time later, and that he was undergoing tests. Although there were no visible wounds or bleeding, Starks did not have a basis for believing there was no reportable occurrence on the ground that Petty was not injured.

C. We turn, therefore, to the final issue: is there a jury-triable question whether Starks reasonably could have believed that, until he heard from Petty's lawyer, Petty would assert no claim against him?

■ Starks maintains that he reasonably could believe Petty would not assert a claim because "the postman displays no anger, makes no threat [and] he tells the insured's daughter that he is covered by insurance." We disagree. Under certain circumstances, verbal assurances that a claim will not be filed may lead a reasonable person not to report an apparently trivial injury, *see Bass v. Allstate Insurance Co.,* 77 N.J.Super. 491, 187 A.2d 28 (1962); Part B *supra;* but we do not believe, in the case of an ostensibly serious injury (as we have here), that a prudent person would rely on such assurances. *See Yorkshire Indemnity Co. v. Roosth & Genecov Production Co.,* 252 F.2d 650, 656 (5th Cir. 1958).

Starks argues, next, that he did not have a reasonable basis for believing there might be a negligence claim, since a person in his situation would not have believed he or his property was the cause of any injury Petty might have received.[8] Apropos of this argument, courts have held that where the causal link between the insured and the

---

7. This court has not addressed the question of the validity and scope of a triviality excuse. Because the facts of Starks' claim do not support such an excuse, we do not reach the question whether, and to what extent, the triviality of the occurrence would be sufficient to justify an insured's delay in giving notice.

8. Specifically, Starks testified on deposition:

Q The dogs were running to see you when Mr. Petty was coming down the street?
A They was coming towards me. I don't know what he was thinking, Mr. Petty. He started yelling, backing back.
Q Was he on your premises at that time?
A No.

    \*   \*   \*   \*   \*   \*

Q Did you ever see your dog attack or touch him?
A No, they didn't touch him.

    \*   \*   \*   \*   \*   \*

Q When Mr. Petty came on that morning to deliver the mail, you said the dogs ran toward you on the other side of the house, and he saw you—were the dogs barking when they were running toward you, making any noises?
A Yeah, they were barking. At first, they wasn't barking, but when they seen me— Mr. Petty was coming up this way (indicat-

ing). He probably thought the dogs was coming toward him or what.

    \*   \*   \*   \*   \*   \*

Q In terms—why do you think Mr. Petty fell down, Mr. Starks?
A Why do I think so?
Q Yes.
A Well, I couldn't tell you, Mr. Harly (sic). If two dogs was coming towards you something like that, he is supposed to be a mailman and used to things like that, I wouldn't see no reason for him to be running backward. I don't know his intention because the dogs wasn't near him when he made his fall. So I really don't know.

    \*   \*   \*   \*   \*   \*

Q What did you do when you heard the dogs?
A Well, Mr. Petty—the dogs were running to me and he seen the dogs and just started hollering.
Q Mr. Petty started hollering?
A Just like that. I didn't understand why he was doing all that. He was on the sidewalk. Then he went back this way and tripped over the curb. I don't know if he was paying any attention to the curb, and that's what he tripped on. The dogs was on my property then.

injury did not appear strong enough to suggest that a claim might be made, the insured was not obliged to notify the insurance company until he or she reasonably should have known the claim was coming. *See Renuart-Bailey-Cheely Lumber & Supply Co. v. Phoenix Insurance Co.*, 474 F.2d 555 (5th Cir. 1972) (summary judgment vacated where insured reasonably believed that accident had not occurred on its property and none of its employees was involved in accident); *Oregon Automobile Insurance Co., supra* (attorney reasonably did not anticipate malpractice claim or notify insurer; although he knew of dispute, he did not believe he had acted in the matter as an attorney); *State Farm Mutual Auto Insurance Co. v. Erickson,* 5 Wash.App. 688, 491 P.2d 668 (1971) (insured was reasonable in not reporting fact that car trying to pass him had collided with wall, where there was no contact between cars).[9]

■ We agree that Starks' version of the incident[10] raises a genuine question as to whether he should have perceived that he or his property caused Petty's fall (and, as a result, that his coverage might be invoked). Starks testified that the dogs were barking and running toward *him,* not Petty, when Petty—who had never entered Starks' property—became frightened and began to back up. Starks further testified that the dogs did not touch Petty. If Starks' testimony is believed, a jury reasonably could conclude that Petty simply overreacted to the barking, and that his fall was caused by his own careless stumbling over the curb. Conceivably, therefore, a jury might conclude that Starks acted "as soon as practicable," *i. e.,* "within a reasonable time," *Greenway, supra* at 755, in notifying North East no earlier than the day he learned of Petty's claim.

In summary, because there is a genuine issue of material fact as to the cause of Petty's injury, *compare Reichman v. Franklin Simon Corp.,* D.C.App., 392 A.2d 9 (1978), the trial court erred in granting summary judgment for North East. Accordingly, we reverse and remand the case for further proceedings.

*Reversed and Remanded.*

---

9. In this connection, we distinguish a case, such as the present one, where the insured's causal relationship to the accident is questionable, "from a case in which an insured knows that it is involved in an accident but decides that it is not liable, and therefore does not report the occurrence to its insurance carrier. Such a determination by an insured does not relieve it of the obligation to report the occurrence." *Renuart-Bailey-Cheely Lumber & Supply Co., supra* at 558. Obviously, it is not always clear whether an insured, in failing to notify the carrier, reasonably perceives no causal connection or, instead, merely no liability. Absent a clear record that the latter perception alone is the case, the question is for the jury.

10. The record on review of summary judgment must be read in the light most favorable to the party opposing the motion. *International Underwriters Inc. v. Boyle,* D.C.App., 365 A.2d 779, 782 (1976).