DIAMOND SERVICE COMPANY, INC.,
et al., Appellants,

v.

UTICA MUTUAL INSURANCE
COMPANY, Appellee.

No. 82–762.

District of Columbia Court of Appeals.

Argued Nov. 9, 1983.
Decided April 9, 1984.

---

Ralph C. Cole, Washington, D.C., for appellants.

R.G. Guziak, Washington, D.C., with whom Timothy E. Fizer, Washington, D.C., were on the brief, for appellee. Keith M. Bonner, Washington, D.C., also entered an appearance for appellee.

Before NEWMAN, Chief Judge, ROGERS, Associate Judge, and GALLAGHER, Associate Judge, Retired.

ROGERS, Associate Judge:

Appellee, Utica Mutual Insurance Company, brought a declaratory judgment action against the Independent Taxi Owners Association and Diamond Services Company to determine its duty to defend the insured, Diamond Service Company, under a general liability policy. Two issues were tried in a jury trial:[1] (1) whether the insured had breached a policy condition by failing to give the insurer notice of the underlying covered occurrence as soon as practicable; and (2) whether, if the insured had breached the policy condition, the insurer waived the breach or was estopped from asserting it. At the close of all the evidence, the trial court directed a verdict for the insurer on both issues. It is from this action of the trial court that the insured appeals.[2] We affirm.

## I.

The underlying events giving rise to this action occurred upon the taxicab lot operated and maintained by Diamond Services Company, Inc. (hereinafter Diamond), at Third and M Streets, N.E., Washington, D.C.[3] On December 12, 1977, Mr. and Mrs. Epstein took their taxicabs to Diamond's lot to have them serviced. They had breakfast while waiting for their cars to be washed, and then Mrs. Epstein went to check on her cab's progress through the car wash line. As she walked up a small incline near the car wash, she slipped and fell on a patch of ice, shattering her ankle after it hit an abutment. Crying and in severe pain, Mrs. Epstein was aided by several persons, including two workers on the gas line, the cashier who called for an ambulance, and Mr. Park, who one month later became an officer of Diamond and The Independent Taxi Owners Association (hereinafter referred to as ITOA).[4] Mrs. Epstein was taken to the Washington Hospital Center where her ankle was placed in a cast, and she did not return to work for almost nine months.

A couple of weeks later, Mr. Epstein discussed the accident with Mr. Russo, who became the president of Diamond/ITOA

---

1. There is no general right to trial by jury in a declaratory judgment action, which is a creature of equity, unless that action presents a "legal" issue. *Beacon Theatres, Inc. v. Westover,* 359 U.S. 500, 79 S.Ct. 948, 3 L.Ed.2d 988 (1959); *Dairy Queen, Inc. v. Wood,* 369 U.S. 469, 82 S.Ct. 894, 8 L.Ed.2d 44 (1962). However, Super.Ct. Civ. Rule 57 does permit a party to demand trial by jury, in actions not triable of right, in accordance with Rules 38 and 39. Diamond requested a jury trial and Utica did not object. Our review of the record indicates both parties, and the trial court, looked to the jury as the trier of fact and we assume, without deciding, that the jury was empanelled pursuant to Rule 39(c) by consent of the parties.

2. Insured also appeals the trial court's denial of its motion to dismiss the declaratory judgment action for failure to state a claim upon which relief could be granted. We affirm the trial court's denial of this motion as we find the motion meritless.

3. Diamond leased and maintained this lot for use by both Diamond cab drivers and others; the lot includes a gas pump, cashier's office, car wash, cafeteria, credit union and lounge.

4. Independent Taxi Owners' Association, Inc. (ITOA) is a Delaware corporation with its principal office at 1404 14th Street, N.W., Washington, D.C. It is a cooperative, non-profit mutual beneficial association of independent taxi owners known as Diamond Cab, first organized in 1926. Diamond Service Company (Diamond) is a Delaware for profit corporation, first organized in 1929, which has the same principal office and officers as ITOA.

approximately one month after the occurrence. Mr. Russo informed Mr. Epstein he already knew about the accident. Mr. Epstein told Mr. Russo the accident had occurred on the Diamond lot, but did not inform Mr. Russo of any intention to press a claim against Diamond or ITOA. Mr. Russo subsequently saw Mrs. Epstein on crutches.

Several months after the accident the Epsteins retained an attorney to represent them in a claim against ITOA. The attorney wrote three letters to ITOA. The first, dated April 10, 1978, stated he was representing Mrs. Epstein "to present her claim for personal injuries and damages sustained as a result of a negligent condition allowed to exist at your facilities causing our client to fall and be seriously injured." The second letter, dated June 21, 1978, was similar to the first, and suggested ITOA's legal department determine if "this matter can be amicably disposed of." The third letter, dated February 2, 1979, indicated that no acknowledgment had been received regarding the attorney's representation of Mrs. Epstein for injuries and damages sustained on December 12, 1977 and that if no answer was received, suit would be filed. None of the letters was answered or returned although they were properly addressed and stamped.

On October 25, 1979, the Epsteins filed suit against the owners of the real property and ITOA as lessee of property where the accident occurred.[5] Service of process was accepted by ITOA's attorney. ITOA sent the suit papers to Utica Mutual Insurance Company (hereinafter referred to as Utica), which had issued a general liability policy for the lot at Third and M Streets, N.E.[6] Utica received the suit papers on November 26, 1979, almost two years after the accident. This was the first notice Utica had received of the December 12, 1977 occurrence.

Utica hired the law firm of Ford and O'Neill to represent ITOA and assigned a claims representative, Mr. Harding, to investigate. Mr. Harding contacted Mr. Russo, and on December 3 took his statement that he had known of the accident several weeks after it had occurred. Mr. Harding also asked Mr. Russo to sign a non-waiver agreement, whereby the insurer and the insured would agree that anything further done by either party in investigating or defending would not be considered a waiver of any rights under the policy. Mr. Russo refused to sign the agreement, claiming he wanted to talk to his attorney. Mr. Harding left the agreement with Mr. Russo; having heard nothing from him for two weeks, Mr. Harding contacted Mr. Russo who claimed he had mislaid the document. Mr. Harding told Mr. Russo he would prepare another.

Unable to obtain a non-waiver agreement from Mr. Russo, Mr. Harding advised Utica's Richmond office to send a reservation of rights letter to the insured advising that Utica was reserving its right under the policy to disclaim liability for breach of the policy. That letter, dated January 9, 1980, was addressed to "Diamond Service Co. et al." the named insured on the applicable policy. Utica received no response to the reservation of rights letter.

On March 6, 1980, Utica requested an opinion from the law firm Brault, Graham, Scott and Brault, regarding the appropriate action to be taken. Utica was advised, on April 7, 1980, to file a declaratory judgment action disclaiming liability for breach of the policy clause requiring the insured to notify the insurer of a covered occurrence

---

5. In its declaratory judgment complaint, Utica named ITOA and Diamond as the insured under the general liability insurance policy for the lot where the accident occurred. ITOA has denied it is an insured, claiming Diamond controls the lot where the accident occurred and is the named insured under the policy issued by Utica. We need not address the merits of these claims in this appeal. For our purposes, the record indicates that ITOA and Diamond have acted as a single entity insofar as is relevant to the issues presented by this appeal.

6. The policy at issue covered the period December 31, 1976 to December 31, 1977.

as soon as practicable. That action, which is now on appeal, was filed July 14, 1980, and was tried before a jury on May 6–7, 1982. The trial court directed a verdict for the insurer at the close of all the evidence, finding that the insured had breached the occurrence clause.[7] On the issue of Utica's waiver of the breach, the trial court found that Utica had taken a reasonable amount of time to investigate the claim, attempted to obtain a non-waiver agreement from Mr. Russo, and within a reasonable time thereafter reserved its rights; on the issue of estoppel, the trial court found no prejudice had resulted to Diamond from the insurer's actions.

## II.

On review of a directed verdict, the evidence must be viewed in the light most favorable to the party against whom the motion for directed verdict has been made. *Corley v. British Petroleum Oil*, 402 A.2d 1258, 1263 (D.C.1979). With the evidence so viewed, a verdict may be directed only when the evidence is so clear that reasonable men could reach but one conclusion. *Id.; Papanicolas v. Group Hospitalization, Inc.*, 434 A.2d 403, 404 (D.C.1981). Viewed in the light most favorable to the appellants the evidence showed that Mrs. Epstein slipped and broke her ankle on property under the control of the insured; several employees of the insured were present at the scene of the accident, and one called an ambulance; Mr. Russo (who was aware of the accident a few weeks after it occurred) and Mr. Park (who was present at the scene on the day of the accident) did not become officers of Diamond/ITOA until after the accident, and they had no knowledge that the Epsteins intended to claim damages; Mr. Russo had refused to sign a non-waiver agreement with Utica; two of the three letters sent to ITOA by the Epsteins' attorney did not

inform ITOA of the date of the accident or of an intention to file suit; Utica received notice of the accident within a month after the Epsteins filed suit, and two weeks after ITOA received suit papers; the accident was the first to occur on Diamond's lot and Diamond/ITOA did not have procedures whereby Mrs. Epstein could file formal notice of the accident.

Notice provisions in insurance contracts are of the essence of the contract. *Lee v. Travelers Insurance Co.*, 184 A.2d 636, 638 (D.C.1962). It is in order to promote the efficient and economic liability insurance administration that such provisions are given effect in the interest of the public as well as the insurer. *Greenway v. Selected Risks Insurance Co.*, 307 A.2d 753, 755 (D.C.1973) (citing *Waters v. American Automobile Insurance Co.*, 124 U.S. App.D.C. 197, 200, 363 F.2d 684, 687 (1966)). The insurance policy issued by Utica covering liability occurrences arising out of Diamond's occupancy of 300 M Street, N.E. included the following provision:

> In the event of an occurrence, written notice containing the particulars sufficient to identify the insured and also reasonably obtainable information with respect to the time, place and circumstances thereof, and the names and addresses of the insured and of available witnesses, shall be given by or for the insured to the company or any of its authorized agents as soon as practicable.

The words "as soon as practicable," generally found in the notice clause, "have uniformly been held to mean within a reasonable time in view of all the facts and circumstances of each particular case." *Greenway v. Selected Risks Insurance Co., supra*, 307 A.2d at 755; *Waters v. American Automobile Insurance Co., supra*, 124 U.S.App.D.C. at 199, 363 F.2d at 686 (1966); Annot., 18 A.L.R.2d 431, 464–65

7. The trial court found that the insured had notice of the accident at the time it occurred because at least three employees were at the scene and aware of Mrs. Epstein's fall; Mr. Russo had acknowledged to Utica's representative that he knew of the accident long before any notice was given to Utica; and the evidence of the three letters sent by the Epsteins' attorney and not returned raised the presumption they were received.

(1951). This court, in *Starks v. North East Insurance Co.*, 408 A.2d 980, 983 (D.C. 1980), applied a three-part test to determine whether an insured's delay in notifying his insurance company of an occurrence was reasonable: (1) what the insured could reasonably have believed was his obligation under the policy;[8] (2) what the insured could reasonably have believed about the seriousness of the injury and his liability for it; (3) what the insured could reasonably have believed about the likelihood of a claim being made against him. *Id.* at 983. We apply this test to determine whether the insured breached the notice provision of the policy[9] because in our opinion the evidence viewed most favorably to appellants amply supports the trial court's conclusion that the insured knew about the occurrence long before it gave notice to the insurer. The trial court correctly concluded that a reasonable person could only find that the insured had notice of the accident when it occurred, almost two years before the suit filed by the Epsteins.[10] We thus must consider whether a jury reasonably could have concluded that insured's notice to the insurer in November 1979, was "as soon as practicable."

As to the first factor, the question is whether the insured should have perceived the accident to be a reportable occurrence within the meaning of the policy. A reportable occurrence is an incident "sufficiently serious to lead a person of ordinary intelligence and prudence to believe that it might give rise to a claim for damages...." *Starks v. North East Insurance Co., supra,* 408 A.2d at 983. To answer, we turn to the second and third factors.

The second factor, the seriousness of the injury and the insured's liability for it, must be resolved against the insured. The undisputed facts show that when the insured's employees, and others, reached Mrs. Epstein, she was lying on the ground in extreme pain, could not move, stated she believed she had broken something, and was taken away by ambulance. Such facts do not support any conclusion other than that the accident was serious. In *Starks v. North East Insurance Co., supra,* this court held that facts demonstrating that the insured saw the injured fall on his back on concrete, refuse to get up, complain of serious pain, need to be helped up, and immediately go to a hospital, unequivocably defeated the insured's argument that the occurrence was too trivial to report. 408 A.2d at 984.[11]

---

8. An insured is held to know the contents of his policy. *Metropolitan Life Insurance Co. v. Johnson,* 363 A.2d 984, 988 (D.C.1976).

9. Such unambiguous provisions "have been judicially expressly effectuated in this jurisdiction." *Waters v. American Automobile Insurance Company, supra,* 124 U.S.App.D.C. at 199, 363 F.2d at 686 (quoting *Ace Van & Storage Co. v. Liberty Mutual Insurance Co.,* 119 U.S.App.D.C. 6, 8, 336 F.2d 925, 927 (1964)).

10. Notice to the employees is sufficient to find notice to the corporation; a corporation can acquire knowledge through agents other than its president. *Capital View Realty Co. v. Meigs,* 92 A.2d 765, 766 (D.C.1952) (citing *Prudential Insurance Co. of America v. Saxe,* 77 U.S.App.D.C. 144, 159, 134 F.2d 16, 31, *cert. denied,* 319 U.S. 745, 63 S.Ct. 1033, 87 L.Ed. 1701 (1943)).

11. This case is in one significant respect distinguishable from *Starks* with respect to what insured should reasonably have believed was the possibility of a claim being filed against him, and his liability. In *Starks* this court held that the reasonableness of Starks' late notice to the insurer was a jury question because there was a factual dispute about whether the injured party fell on Starks' property. This court therefore followed the general rule that where the causal link between the insured and the injury does not appear strong enough to suggest that a claim will be made, the insured is not obliged to notify the insurance company until he reasonably knows the claim is coming. *Starks v. North East Insurance Co., supra,* 408 A.2d at 984–85 (citing *Renuart-Bailey-Cheely Lumber and Supply Co. v. Phoenix Insurance Co.,* 474 F.2d 555 (5th Cir.1972)). There is no disagreement here that Mrs. Epstein fell on the insured's property. Thus, this is the case, distinguished in *Starks,* where the insured knew it was involved in an accident, but decided it was not liable (or is not sure whether it is liable), and therefore does not report the accident. *Starks v. North East Insurance Co., supra,* 408 A.2d at 985 n. 9.

Furthermore, the insured could not reasonably rely on Mr. Epstein's failure to mention the possibility of a lawsuit to Mr. Russo, when the two discussed the accident, as a basis for not reporting the occurrence. Since verbal assurance that a claim will not be filed is insufficient to excuse notice of a serious injury,[12] mere silence would not be relied upon by a prudent person. In addition, the Epsteins' attorney's letters of representation, which the trial court correctly found were received by ITOA,[13] should have prompted the insured to realize that Mrs. Epstein intended to bring a claim for damages. Accordingly, we hold that the trial court correctly ruled that a jury could only reasonably have concluded that the insured knew of the occurrence two years before it gave notice to the insurer, the injury was serious enough to give rise to a claim for damages, the insured's property was involved, and the insured breached the policy clause that notice be given as soon as practicable.

■ Appellants also assert as error the trial court's finding that Utica did not waive its right to deny coverage. Appellants contend that Utica waived the breach by controlling appellants' defense from November 26, 1979, (when Utica first received notice of the covered occurrence), until the filing of the declaratory judgment action on July 14, 1980. Alternatively, appellants contend Utica is estopped from asserting appellants' breach of the policy. Waiver is an act or course of conduct by the insurer which reasonably leads the insured to believe that the breach will not be enforced. *George Washington Life Insurance Co., v. Morgan,* 118 A.2d 685, 686 (D.C.1955).[14]

Estoppel, on the other hand, generally results when an insurance company assumes the defense of an action or claim, with knowledge of a defense of non-liability under the policy; to prevail on this basis, the insured is required, in some jurisdictions, to show prejudice while in other jurisdictions prejudice will be presumed.[15]

The undisputed facts are that Utica attempted to obtain a non-waiver agreement with the insured in December 1979. When the insured failed to execute the agreement Utica sent a reservation of rights letter to the insured on January 9, 1980, stating that

In acknowledging receipt of this information, it is with the understanding that we will investigate the matter but such investigation or any other act on the part of the Company is not to be construed as a waiver of the policy provisions or the rights of the Company thereunder.

The insured did not respond to this letter. In March 1980, Utica sought an opinion from its attorneys as to the appropriate course of action, and upon receiving legal advice in April, filed a declaratory judgment action to determine its liability under the policy in July 1980. The testimony further demonstrated that Ford and O'Neill took the following actions on behalf of the insured: they filed an answer on November 30, 1979, generally denying the allegations of the Epsteins' original complaint; consented on December 28, 1979 to the filing of an amended complaint which, in turn, was filed on January 22, 1980, adding as defendants Diamond Service Company, an additional owner of the real property at Third and M Streets, N.E., and the employee who was washing taxicabs at the time

12. *Starks v. North East Insurance Co., supra,* 408 A.2d at 984.

13. A letter properly addressed, stamped and mailed, is presumed to have been duly delivered to the addressee. *Toomey v. District of Columbia,* 315 A.2d 565, 567 (D.C.1974); C. McCormick, Evidence § 343, at 807–08 (2d ed. 1972).

14. In *George Washington Life Insurance Co. v. Morgan, supra,* 118 A.2d at 686–87, the court found no evidence the insured was misled when

the insurer accepted a late payment on a medical and surgical expense policy after the grace period. "Since acceptance of a premium in arrears was in accordance with and under a special clause of the policy, waiver or estoppel cannot be said to have resulted." *Id.*

15. 7c Appleman, *Insurance Law and Practice* § 4694 (Berdal ed. 1979). *Walker v. American Ice Co.,* 254 F.Supp. 736 (D.D.C.1966), *aff'd,* 127 U.S.App.D.C. 364, 384 F.2d 316 (1967).

and place where Mrs. Epstein fell; advised Mr. Russo, at his request, on responding to interrogatories; and filed an answer to the amended complaint on May 21, 1980, consisting of general denials and affirmative defenses.[16]

The issue, therefore, is whether a jury could reasonably have found these actions by the insurer to be a course of conduct which caused the insured to believe that Utica had waived breach of the notice provision or, alternatively, whether the actions by Ford and O'Neill constituted control over Diamond's defense for a substantial period of time resulting in prejudice to Diamond. To address these issues, an initial inquiry must be undertaken to determine whether Utica's unilateral reservation of rights letter was effective to reserve its right to disclaim liability.

▮ In this jurisdiction a liability insurer assuming and conducting the defense of an action brought against the insured, with knowledge of a ground of forfeiture and without disclaiming liability and giving notice of its reservation of rights, is thereafter precluded, in an action upon the policy, from setting up such ground of forfeiture. *Walker v. American Ice Co., supra* note 15, 254 F.Supp. at 741; *M.A.P. v. Ryan,* 285 A.2d 310 (D.C.1971). There is, however, no decision in this jurisdiction regarding the effect of a unilateral reservation of right following an unsuccessful attempt to achieve a bilateral non-waiver agreement. Some courts have held that where an attempt to achieve a bilateral non-waiver agreement with the insured fails, and a unilateral reservation of rights is subse-

quently sent to the insured by the insurer, the insured's failure to respond makes the reservation of rights effective to preserve the insurer's rights under the policy. *Pacific Indemnity Co. v. ACEL Delivery Co.,* 485 F.2d 1169, 1174 (5th Cir.), *cert. denied,* 415 U.S. 921, 94 S.Ct. 1422, 39 L.Ed.2d 476 (1974); *Ohio Casualty Insurance Co. v. Rynearson,* 507 F.2d 573, 580 (7th Cir. 1974); *State Farm Mutual Auto Insurance Co. v. Anderson,* 107 Ga.App. 348, 130 S.E.2d 144 (1963). Other courts have required the insured's consent to the reservation of rights and will only find consent in the insured's silence if the reservation of rights letter informs the insured of his right to reject the insurer's defense of the case under the reservation and insured's right to have his own attorney. *Merchant's Indemnity Corp. v. Eggleston,* 37 N.J. 114, 127–29, 179 A.2d 505, 512 (1967); *Mundry v. Great American Insurance Co.,* 369 F.2d 678 (2d Cir.1966). Those courts require such informed consent so the insured can hire its own attorney without prejudicial delay to the defense of the underlying action, and to permit the insured to control a case in which the insured may be required to pay any final judgment. *Merchant's Indemnity Corp. v. Eggleston, supra,* 37 N.J. at 127–29, 179 A.2d at 512; *Vornado Inc. v. Liberty Mutual Insurance Co.,* 106 N.J.Super. 111, 116–118, 254 A.2d 325, 328 (1969).

▮ Diamond/ITOA urges this court to adopt the latter rule and hold that Utica did not effectively reserve its rights. On the record before us, we decline to do so.[17]

**16.** The record does not indicate that any other action was taken on behalf of the insured by Ford and O'Neill.

**17.** The New Jersey rule, which appellants urge upon this court, has been applied in very different factual circumstances. Thus in *Sneed v. Concord Insurance Co.,* 98 N.J.Super. 306, 237 A.2d 289 (1967), the insurance company did nothing for twenty-two months after receiving notice of non-coverage, and then not only negotiated a settlement with one party but did not turn over its investigative files to the insured to assist him in defending the underlying lawsuit.

The court refused in those circumstances to give effect to a unilateral reservation of rights by the insurance company. *Id.* at 314–15, 237 A.2d at 293. In *Merchants Indemnity Corp. v. Eggleston, supra,* the insurance company tried to withdraw from the defense, which it had handled for nine months on behalf of the insured, just before the case was to go to trial. Neither a reservation of rights letter or non-waiver agreement was in existence. The court refused to hold that the institution of a declaratory judgment action by the insurance company constituted notice of its reservation of rights to the insured. In both cases the litigation involved personal injury and

The relationship of insured and insurer presumes good faith on both sides. Diamond/ITOA's attorney has been aware of the underlying personal injury action at least since the filing of the original complaint October 25, 1979. Where, as here, an insured commercial business entity has timely notice from its insurer of a potential problem with the insurer's liability for the insured, it cannot benefit from its silence or inaction where there is no evidence it will not be able to prepare its defense. Utica requested a non-waiver agreement from the insured eight days after it received its first notice of the occurrence. Diamond/ITOA failed to reply to the reservation of rights letter sent one month later or otherwise indicate it did not agree to Utica's offer to defend conditionally. *See Boise Motor Car Co. v. St. Paul Mercury Indemnity,* 62 Idaho 438, 447–49, 112 P.2d 1011, 1016 (1941) (where insured acquiesced in reservation of rights, insurer's continued defense of suit not waiver). Yet Diamond/ITOA continued to have contacts with Utica and the attorneys Utica had hired to handle the insured's defense. We hold that on these facts Utica effectively reserved its right to deny liability.

■ ■ Diamond asserts, however, that Utica waived its right to disclaim liability because it controlled Diamond's defense for a substantial period of time. We disagree. The insurance company has a duty to defend the insured until it disclaims liability. *State Farm Mutual Auto Insurance Co.*

*v. Kay,* 26 Utah 2d 195, 198–200, 487 P.2d 852, 855 (1971). Utica spent several months investigating the breach and its rights under the policy. This it was permitted to do; an insurer has a reasonable time to investigate the facts to determine its acceptance of liability. *Lee v. Travelers Insurance Co., supra,* 184 A.2d at 639.[18] Such investigation is both necessary and desirable since prompt, proper investigations can lead to early and efficient settlement of claims in the interest of the public as well as all parties to a given action. *Waters v. American Automobile Insurance Co., supra,* 124 U.S.App.D.C. at 200, 363 F.2d at 687.

Between the time of the reservation of rights letter (dated January 9, 1980) and the declaratory judgment action (filed July 14, 1980), the only actions undertaken by the insurer were to advise Mr. Russo on answering interrogatories and to file an answer to the amended complaint.[19] The record does not indicate the nature of the interrogatories or Mr. Russo's answers thereto; however, appellants have not specifically raised any concern in this regard. The answer filed by Utica preserved Diamond/ITOA's defenses to the Epsteins' lawsuit by general denial and assertion of affirmative defenses on Diamond/ITOA's behalf. Thus, Utica did no more than reserve its rights and take some minimal actions which were necessary to preserve its insured's defenses, without any objection by Diamond/ITOA or any inquiry as to

---

damage actions against individual insureds arising from automobile accidents. Good faith, the essence of insurance contracts, "demands that the insurer deal with laymen as laymen and not as experts in the subtleties of law and underwriting." *Id.* 37 N.J. at 122–23, 179 A.2d at 509, *quoted in Ebert v. Balter,* 83 N.J.Super. 545, 557–59, 200 A.2d 532, 540 (1964).

18. *Boise Motor Car Co. v. St. Paul Mercury Indemnity, supra,* 62 Idaho at 447–49, 112 P.2d at 1016; *Ebert v. Balter, supra,* 83 N.J.Super. at 552–54, 200 A.2d at 537 (such investigations do not constitute a waiver of any defense); Annot., 38 A.L.R.2d 1148 (1954) ("Liability Insurance: insurer's assumption of or continuation in defense of action brought against the assured as

waiver or estoppel as regards defense of noncoverage or other defense existing at time of accident").

19. Diamond/ITOA's assertion that it was prejudiced by Ford & O'Neill's failure to oppose the summary judgment filed on March 18, 1980 on behalf of two of the three defendants, the National Bank of Washington and one of the other real property owners who was deceased, is without merit. The summary judgment was filed against the Epsteins; it was their responsibility to defend against that motion. Moreover, appellants have not indicated in what manner they are or will be prejudiced by the summary judgment.

the reason for the reservation of rights.[20] We hold the trial court did not err in finding that no reasonable juror could have found that Utica's action constituted a course of conduct which led Diamond to believe that the breach of the policy would not be enforced.[21]

Appellants assert in the alternative that Utica was estopped to deny coverage because its defense of the action on behalf of the insured prejudiced the insured. Appellants contend the seven-month delay between the time Utica knew there was a good possibility it would withdraw and the filing of the declaratory judgment action was prejudicial, because Utica substantially controlled the underlying action. As further evidence of Utica's control of Diamond/ITOA's defense, appellants also assert they did not hear from Utica between January 9, 1980 and the filing of the declaratory judgment.

Some courts apply estoppel against the insurance company only when it has conducted the action to final judgment or has settled claims. *Boulet v. Millers Mutual Insurance Association of Illinois*, 362 F.2d 619, 622–23 (8th Cir.1966); *Walker v. American Ice Co., supra*, 254 F.Supp. at 742; *State Farm Mutual Auto Insurance Co. v. Kay, supra*, 26 Utah 2d at 198–200, 487 P.2d at 855. Other courts, notably the New Jersey courts, hold that prejudice to an insured will be presumed when the insurer controls the insured's defense for a substantial period of time, though it does less than pursue the claim to settlement or final judgment. *Merchant's Indemnity Corp. v. Eggleston, supra*, 37 N.J. at 129–32, 179 A.2d at 513–14; *Sneed v. Concord Insurance Co., supra*, 98 N.J.Super. at 317–19, 237 A.2d at 295. Appellants urge us to adopt the rule of the New Jersey courts and find that they were presumptively prejudiced because Utica controlled their defense for a substantial period of time.

We disagree that Utica substantially controlled Diamond's defense to the Epstein suit for the reasons previously discussed. We also disagree that any action taken by Utica prejudiced appellants. Appellants argue that Ford and O'Neill's acquiescence to the Epstein's adding of Diamond as an additional defendant, and acceptance of service of process, were prejudicial. We find this contention is without merit. Diamond is the named insured in the liability policy covering the place of the accident, and Diamond and ITOA, sharing offices, officers, directors, and counsel, are effectively the same entity in this suit for the purpose relevant here. Additionally, Diamond had no defense to the filing of the amended complaint as it was not yet a party and therefore could not have prevent-

---

**20.** Unlike New Jersey law, the insurer is not required in the District of Columbia to show that it has been prejudiced in order to avoid coverage. *Greenway v. Selected Risks Insurance Co., supra*, 307 A.2d at 756. Utica has noted, however, that the two-year delay in notification prejudiced its ability to investigate and defend against the Epsteins' claim.

**21.** The facts of this case are analogous to those of *State Farm Mutual Auto Insurance Co. v. Kay, supra*, 26 Utah 2d at 195, 487 P.2d at 852. There the insurer's counsel for the insured filed an answer to a complaint on August 1, 1969, took the deposition of the injured party on August 29, 1969, and filed its declaratory judgment action to disclaim liability October 23, 1969. The insurer had not reserved its rights prior to taking the above actions on behalf of its insured. The court held that the insurer was not estopped to deny coverage. Following *Apex Mutual Insur-*

*ance Co. v. Christner*, 99 Ill.App.2d 153, 240 N.E.2d 742 (1968), the *Kay* Court held that no reservation of rights was necessary when the insurer institutes a declaratory judgment action and the insured is personally served. *Id.* 487 P.2d at 854.

We need not reach the issue of whether, as the *Kay* court decided, the declaratory judgment is an unequivocal assertion of non-liability and personal service affords the insured the proper notice, since we hold Utica did reserve its rights prior to filing the instant action. We note additionally that while *Kay* was concerned with estoppel, and we are presently addressing waiver, the outcome under either theory, if successfully asserted, is the same, and both theories substantially depend upon the insurer's knowledge of facts giving rise to forfeiture and its actions in defending its insured. We discuss estoppel below.

ed that complaint from being filed. Although the Epsteins could not have filed the amended complaint without leave of court, since a responsive pleading had already been filed, we are unaware of any reason to believe that the Epsteins could not have obtained court approval to file an amended complaint.[22] *Bennett v. Fun and Fitness of Silver Hill, Inc.,* 434 A.2d 476, 478 (D.C.1981) (virtual presumption in favor of granting leave to amend). Moreover, acceptance of service of an amended complaint by the insured's attorney does not necessarily constitute prejudice. *See Boulet v. Millers Mutual Insurance Association of Illinois, supra,* 362 F.2d at 623 (acceptance of service of a cross-claim held to be non-prejudicial to the insured).

Diamond has made no showing that its ability to defend itself has been hampered or harmed by the few actions taken by the insurer.[23] The insured's attorney has been aware of their lawsuit since it was filed and there is no showing that pretrial preparation has been prejudiced, or that necessary witnesses have become unavailable, and no evidence that any settlement negotiations have been hindered by Utica's actions. Nor is there evidence, other than Diamond's unsupported assertions, that the insured was lulled into reliance on the insurer by the insurer's action.[24] Not only did the insured have counsel readily available to it at all relevant times and not respond to the reservation of rights letter, but contrary to Diamond's assertion, the insured was in contact with Ford and O'Neill between January and July 1980, and could

have inquired of Utica about the status of its investigation. Under these circumstances, it would be inappropriate to hold that prejudice to the insured is presumed. Accordingly, in the absence of a showing of prejudice, and we find none, no estoppel can be found.

The judgment of the trial court is therefore

*Affirmed.*

---

22. Superior Court Civil Rule 15(a) provides, in pertinent part:

> A party may amend his pleading once as a matter of course at any time before a responsive pleading is served or, if the pleading is one to which no responsive pleading is permitted and the action has not been placed upon the trial calendar, he may so amend it at any time within 20 days after it is served. Otherwise a party may amend his pleading only by leave of court or by written consent of the adverse party; and leave shall be freely given when justice so requires.

23. The Epsteins' lawsuit has been stayed since October 18, 1982. The record before us, however, does not indicate that anything has occurred in their case since the answer to the amended complaint was filed on May 21, 1980.

24. Compare with *Sneed v. Concord Insurance Co., supra,* 98 N.J.Super. 306, 237 A.2d 289, wherein the insurer attempted to disclaim liability after it had settled one claim with knowledge of the facts giving rise to non-coverage; *Ebert v. Balter, supra,* 83 N.J.Super. 545, 200 A.2d 532, wherein the insurer disclaimed thirty-one months after notice of a possible basis of non-coverage after telling its insured not to worry about non-coverage.